Good morning, Your Honors. Again, my name is Damien Schiff, Counsel for the Appellants Michael and Chantell Sackett. With the Court's indulgence, I'd like to reserve two minutes of my time for rebuttal. The compliance order that EPA has issued against the Sacketts is judicially reviewable, not just because it constitutes final agency action and not just because it operates with near-injunctive-like force, causing the approval of nearly $25,000 per day in administrative fines, but also because Congress... I mean, the statute says that those penalties can be imposed, but nobody's actually imposed them yet. That is correct, Your Honor, but the liability attaches by not abiding by the compliance order, once the compliance order is issued. But a court has to, at some point, impose them. And your argument is that you're entitled to due process review prior to the issuance of a compliance order, but why isn't it sufficient to give you that review after the agency initiates a civil enforcement action to try and actually impose and collect penalties? You're correct, Your Honor. If judicial review is simply delayed, we do not contend that that in and of itself would violate the due process rights of the Sacketts. Rather, the problem here is what the Eleventh Circuit identified in TVA, which is we don't have a regime that simply delays judicial review. We have a regime that offers constitutionally inadequate judicial review. In the context of an enforcement proceeding where EPA brings an action in court to assess civil penalties against the Sacketts, pursuant to a compliance order, the Sacketts would not be able to raise the jurisdictional defense that there are no wetlands on their property that fall within the purview of the Clean Water Act. Why not? Why isn't that inherently one of the questions that a federal district court would have to ask before it decided that there was liability here for which penalties should attach? It is not, Your Honor, because as TVA explained, the Eleventh Circuit explained in TVA, the statute allows EPA to issue a compliance order on the basis of, quote, any information available to the administrator. But Congress was concerned, was it not, about emergencies? I mean, although I realize that the Oil Pollution Act exists, when the Exxon Valdez goes aground on Bly Reef, we don't want to wait for a civil suit to be filed in the District of Alaska. We want EPA to be able to go in and take immediate action in order to order remediation efforts, don't we? The difficulty, Your Honor, is that even with the EPA compliance order, as you've already noted, it's not as if EPA can then simply go in and force the Sacketts to comply without first seeking an enforcement of that order. In essence, what the compliance order is, is it's akin to a civil complaint. Or if it were a criminal case, an information filed by the United States Attorney that puts the offender on notice that they're in violation of the environmental laws and that they better take steps to address those violations or enforcement action will fall. Well, with respect, Your Honor, we would say that it's something more than that. That it's more than just simply a notice of warning. That it is a source of independent liability. Meaning that because EPA has issued the compliance order against the Sacketts, should EPA choose to bring an enforcement action in the district court against the Sacketts, they would then be liable not just for statutory violations, but they would now also be liable. A separate liability would attach for any violations of the compliance order itself. So the daily maximum penalty could be larger because you've got to, as I understand it, you've got a daily penalty potentially for violating the Clean Water Act and also another segment potentially for violating a compliance order. But I thought that the EPA had said that it agreed it could not enforce a compliance order unless it was shown that there was a Clean Water Act violation. Yes, Your Honor, EPA has articulated that position in this litigation. Well, do I understand correctly now that EPA has authority to declare that a manufacturer of automobiles is offending and they'd better cease immediately? Well, it's pollution, they say, air pollution or global warming. Is that how far this is going? Well, Your Honor, it is correct that EPA has determined that car emissions are pollutants under the Clean Air Act. And that does bring into play the Alaska Department of Environmental Conservation case from this court, which we rely upon in the briefing, in which this court had no difficulty in reviewing a compliance order on the merits issued under the Clean Air Act. And yet the court had no reservation about potentially interfering with EPA's ability to enforce the equally important environmental protections of the Clean Air Act. That same logic should apply in the Congress. Who's responsible for global warming anyway? Well, Your Honor, that is a... Well, ask those guys in Copenhagen. Yes, Your Honor, that is something that thankfully is well beyond my competence and which I have... It's beyond the act? Well, the Supreme Court has at least said that that is potentially within the act and the agency has acted. Okay, but you're talking about the agency's responsibilities under the Clean Air Act, not the Clean Water Act. That is correct, Your Honor. And here we're dealing with the Clean Water Act. So let me tell you what troubles me about your side of the case. And I think, Mr. Schiff, that, you know, your briefing is great and your argument on the EPA's is very good, too. But what's a stumbling point for me is it looks to me like we've got seven or eight circuits that have held that under the Clean Water Act an enforcement compliance order can't be reviewed by a district court. Okay, so... And I realize you've got the precedent of the TVA case under the Clean Air Act, you know, going along with the due process theory and looking in the other direction. But still, if we were to adopt that view here and follow TVA, wouldn't we be making a split with the other seven or eight circuits about the Clean Water Act? And you probably know how the Ninth Circuit usually does it, the Supreme Court, when, you know, we take one position and seven or eight circuits take another. Yes, Your Honor. At least in this case, we would submit that there already is a split. It's not as if this court would be creating the split. And we believe that it's not so much a split as it is a looking at an issue that was either glossed over or was not even raised in what we've called in the briefing the Hoffman Group line of cases. All of those cases proceed upon what we consider to be the false premise that there is constitutionally adequate opportunities for judicial review in the context of an enforcement action. TVA, the last case in that long line of cases, says no, that's not true at all. And we believe that that is, in fact, the appropriate resolution. Okay. So your argument is that there is already a split because you're grouping the Eleventh Circuit TVA case under the Clean Air Act as in the same family with the Clean Water Act cases. Because the language is similar in the statutes and the court's reasoning might have addressed both, right? Yes, Your Honor. But you are correct that there is no circuit court that has held that specifically Clean Water Act compliance orders are judicially reviewable. But we submit that TVA got it right in saying that there is no meaningful distinction between the compliance order regimes of the Clean Air Act. How can you say that by issuing your order and telling these particular defendants that they can't build their house on a tract of land that's adequate for a house, it seems to me, because of a water problem? Isn't that a taking? Well, Your Honor, we certainly believe that if, in fact, EPA were to say that the entire parcel were undeveloped because of Clean Water Act restrictions, that that might very well constitute a taking. Well, they did more than that. They told them to remove and resoil. Indeed, at a cost in the record of perhaps over $27,000, all of which the sackets would have to expend in order to obtain an ultimate judicial review of, say, a permit proceeding. But even there, they would not be able to recoup any of the costs that they expended in the permit process or in the process of complying with the compliance order. Why were your clients unwilling to meet and confer with the regulators to modify the terms of the compliance order? Your Honor, we believe that the sackets were very much eager to meet with the EPA officials. In fact, following the issues of the compliance order, the counsel for the sackets sent a letter to EPA requesting an opportunity to meet and to have a hearing to contest the jurisdictional bases that formed the issuance of the compliance order. Did you all go through our mediation process before you arrived here today to see if you could resolve this? No. Well, I should say, Your Honor, I don't know whether we were selected for that, but I can certainly tell you that we did not actually pursue mediation. Okay. Okay, and you might want to – your time is up, but we'll give you two minutes for rebuttal. Thank you very much, Your Honor. Very interesting issues. Thank you very much, Your Honor. Thank you, sir. So Ms. Newman. Good morning, Your Honor. May it please the Court, Jennifer Newman representing EPA. With me at counsel's table is Ankur Tohan, who is counsel at EPA. Here in Seattle. Here in Seattle. The Clean Water Act affords the SACCOTS sufficient due process because it allows for judicial review of any and all of their claims before any penalty is imposed for a violation of the administrative compliance order that EPA issued. In the Clean Water Act, Congress intended to prohibit pre-enforcement judicial review. As the Court has acknowledged, every circuit that has addressed this question under the Clean Water Act has concluded that Congress intended to promote EPA's ability to quickly enforce the Clean Water Act by allowing them to pursue this administrative compliance order alternative without being dragged into court. So you think there is a substantive difference in the way that we should approach this question if we're talking about a clean water case versus a clean air case? I think that that's true with respect to whether or not pre-enforcement judicial review was intended to be prohibited. There are some early Clean Air Act cases out of the Eighth Circuit, I think it's Fry Roofing case and a Union Electric case, that talk about this same sort of principle applying under the Clean Air Act. However, there was an amendment to the Clean Air Act which indicated that Congress did in fact intend these orders to be reviewed in the normal course if they're final agency actions. By the way, your opposing counsel mentioned the Alaska case, the ADEC case. Yes. So I have sort of a vague recollection. I know I was on some ADEC case. Was I on that panel, Dana? I think that you were. So what's different then about that case as to why we thought we had jurisdiction there? There shouldn't be jurisdiction there. That case arose after this amendment to the Clean Air Act in which Congress expressed its view that under the Clean Air Act, administrative compliance orders pre-enforcement judicial review could be had. And so that's a major distinction. Also, the question of what exactly the effect was of the administrative compliance order in the ADEC case is a little bit different than what we have here. In ADEC, you had a company that was permitted to do some construction by the state of Alaska, and EPA's action cut off that right. Is that what it was? It was probably Cominco? Yes. And it was going to sort of block them from building whatever they were going to build up there? That's correct. And while this administrative compliance order issued under the Clean Water Act here in this case does instruct the SACETs to restore their wetlands to the condition that they were in before they placed the illegal fill there, it's not quite the same sort of penalty that can't be enforced without going to court. Okay. So, of course, we don't have one rule for a big company like Cominco and another rule for the SACETs. That's right. So there has to be a difference in the Clean Water Act and the Clean Air Act to justify the difference. The major difference is that Congress in the Clean Water Act intended to preclude this pre-enforcement judicial review, and it later amended the Clean Air Act to allow pre-enforcement judicial review so long as the order that's being reviewed meets the normal standards of being a final agency action, which is why that was the question in the ADEC case. Was the order in that case a final agency action? What do you think of Mr. Schiff's argument that we wouldn't be creating a circuit split if we accepted his view because there already is one between the TVA case and those Clean Water Act cases? I think that that's not correct. Again, the statutes are similar, but they're not identical, and the major difference is the Clean Air Act, Congress allowed this sort of pre-enforcement review to happen, and under the Clean Water Act it didn't want pre-enforcement review to occur. And so I think that it matters that TVA v. Hill is a Clean Air Act case for that reason. So certainly it would be creating a split on the interpretation of the Clean Water Act if this court were to follow TVA v. Hill. However, I think that beyond the question of whether or not the court would create a circuit split, I don't think the court would want to follow the TVA v. Hill case because that was premised on the assumption that the plaintiffs there could never get judicial review of the underlying order, of the validity of the order that EPA has issued. And we've stated in this case and every other circuit court who has looked at this question under the Clean Water Act has said that when EPA, if EPA, chooses to bring an enforcement action against the SACETs or other similarly situated people who have received an administrative compliance order, at that point a court can review the validity. Is there jurisdiction over the site under the Clean Water Act? Is there any circuit court case that's held that due process requires a rule as the EPA states its position is? In other words, if we accepted your view based on your representation and we thought that was controlling on the due process issue, does there have to be an opinion that says that? Because for all I know, the EPA could tell you to say one thing today and they could tell some other lawyer to say something else in 60 days. Now I understand the question, Your Honor. Certainly every other circuit court that has addressed this question has written that into the opinion, and I think it would be perfectly fine for this court to so write it into the opinion, that if EPA chooses to bring an enforcement action against the SACETs or other persons who receive administrative compliance orders, that they will have an opportunity to challenge the validity of the administrative compliance order in any subsequent enforcement proceedings. Whether that has to be part of the opinion, I don't know. I mean, certainly we've written it in our brief, and we're making that representation here. It would be hard-pressed to change it. I'm looking now at the statute itself. Is the basis for your argument the language of Section 1319 of Title 33, where the issuance of the permit conditions or the compliance order cross-references to all these other Clean Water Act sections because the compliance order has to be issued in reliance on those sections, which in turn means there must be jurisdiction over navigable waters? That's certainly part of it, Your Honor, but also a big part of it is that the Act says that EPA can only issue the compliance order based on a finding that there is a violation of the Clean Water Act. One thing I think that troubled Judge Joe Flatt and his colleagues in the TVA case was that the statute literally read, says that all you have to do is find a violation of the terms of the compliance order and penalties may be imposed. That's correct. But your understanding of the statutory scheme is that a compliance order is invalid if it does not otherwise comply with the other provisions of the Clean Water Act that establish when the agency can act. That's correct. And I'm also aware of no court other than TVA, who of course didn't have an enforcement proceeding in front of it, that has ever said that persons like the Sacketts would be unable to receive judicial review. Every court has simply gone the other way on that question, and I think rightly so. We wouldn't want to live in a world where EPA could issue orders and they could never be reviewed at all. I think that all of the other issues that were raised in the Sacketts briefs, the final agency action, the sovereign immunity, those are really ancillary to these questions of did Congress intend to preclude judicial review and is that a violation of due process. So unless the court has questions about those specific issues, I will just ask you to affirm. Okay. I have no questions because the briefs are very good on both sides. Judge Beeser, just tell me. Okay. No questions. So we thank both counsel for their excellent arguments and the Sackett versus the United States EPA shall be submitted. I thought you gave a couple minutes to Mr. Schiff. Oh, okay, that's right. We said we'd give you more. Come on back. Sorry about that. I could always use my opposing counsel's remaining one minute to arrogate to myself some extra time. Stacey set the clock at three minutes, so we'll get the very best that Mr. Schiff can offer us. Thank you very much, Your Honor. I do appreciate it. With respect to the circuit split question, it is unquestionable that there is an existing circuit split on what a compliance order does because in ADEC this court held that a compliance order is final agency action that can be judicially reviewed. The Eleventh Circuit held that a Clean Air Act compliance order is not final agency action because it would be unconstitutional to issue it and to give it legal force. Well, I don't know if this is a distinction that makes a difference, but final agency action is an APA basis for invoking review under, what is it, Section 701 and 706. But I was talking with opposing counsel about compliance orders that are issued under the Clean Water Act itself, and that is a separate jurisdictional basis, is it not, for a means of challenging, through an enforcement action, the authority to issue the compliance order in the first place? Well, the sackets assert that the compliance order issued under the Clean Water Act is judicially reviewable pursuant to the APA. To both, is it not? Or do you think APA is the only basis for jurisdiction? The APA is the basis for judicial review of the compliance order. The due process implications of the enforcement regime that EPA has to enforce the compliance order, because those due process, because that compliance order regime is constitutionally inadequate, that therefore requires that under the APA, the fallback judicial review provisions of the APA should apply. The APA applies when there is no other adequate remedy for judicial review. But if we disagree with your conclusion that this is a final agency action, why wouldn't you still have Section 1331 Federal Question Jurisdiction under the Clean Water Act to challenge the compliance order? The difficulty there, Your Honor, is that Section 1331 doesn't waive sovereign immunity, so we would have to pursue either a due process claim on the grounds that if we have no way of challenging the compliance order with the full penalty of defenses, jurisdictional defenses and what have you. But you challenge it through the enforcement proceeding, do you not? Which is then when it's filed against your clients for failing to comply with the compliance order. Again, Your Honor, that all raises the question of whether in the enforcement proceeding we can, in fact, obtain full judicial review of the compliance order. But if we issue an opinion that essentially says you do have that right, then that should satisfy your due process concerns, shouldn't it? You're absolutely right, Your Honor. If this Court were to hold that the judicial review provisions in an enforcement proceeding that EPA might bring against the SACIS, if in such a proceeding the SACIS could raise all defenses, then that would dispose of the due process claim. Okay. Well, thank you. Mr. Schiff, both you and Ms. Newman have made excellent arguments, and we hope we'll see you both back here again, but not necessarily against each other. Thank you very much, Your Honor. Thank you. By the way, we do have a procedure, and neither of you should raise your hand and say I would do it, but we have a procedure that sometimes we will issue an order that defers our submission for, you know, a week or a couple of weeks to let the parties tell the clerk if they want to mediate in the Ninth Circuit. And if we issue such an order, we do not learn if any party wants to do it or doesn't. They just communicate with the clerk. So I'm just speaking for myself. I might urge my colleagues to enter such an order so that you could both think about that issue, but if you decide not to do it, we would probably decide your case anyway. One or the other. Okay. We thank you both. Okay, I think I'm probably safe now to say Sackett v. EPA shall be submitted, and we can go on with the next case on our argument calendar.
judges: Beezer, Gould, Tallman